IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WHITNEY R. PALAFOX                                                                      PLAINTIFF

                v.                              Civil No. 10-2118

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                          DEFENDANT

## MEMORANDUM OPINION

**I.     Procedural Background**

Plaintiff, Whitney R. Palafox, appeals to this Court from the decision of the Commissioner of the Social Security Administration denying her application for supplemental security income benefits ("SSI"), pursuant to §42 U.S.C. 405(g).

Plaintiff protectively filed her SSI application on April 29, 2008, alleging a disability onset date of March 4, 2004, due to multiple sclerosis ("MS"), migraine headaches, and depression. Tr. 9, 11, 90-92, 99, 109-118. At the time of the application date, Plaintiff was twenty three (23) years old with a high school education. Tr. 30, 99, 107, 373, 514. She has no past relevant work.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 65-68, 74-75. At Plaintiff's request, an administrative hearing was held on July 14, 2009. Tr. 27-62. Plaintiff was present at this hearing and represented by counsel. Tr. 27-62. The ALJ rendered an unfavorable decision on April 2, 2010, finding that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 6-17. Subsequently, the Appeals Council denied Plaintiff's Request for Review on July 19, 2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

**II.     Factual Background**

In 2006 and 2007, Plaintiff was treated for several impairments, including gastroenteritis, severe anemia associated with heavy menstrual flow, depression, back pain, headaches, weakness in her hands, numbness in her feet, dizziness, and fatigue.  Tr. 176-268, 424-444.

Plaintiff received routine treatment at AHEC in Fort Smith.  Tr. 176-268.  In January 2006, Plaintiff presented with complaints of depression, back pain, headaches, and weight gain.  Tr. 264-268.  Kelli Rippy, M.D., diagnosed Plaintiff with depressive disorder and prescribed Zoloft.  Tr. 265.  In February 2006, Plaintiff stated that Zoloft was no longer effectively treating her depression.  Tr. 262-263.  As a result, Dr. Rippy increased her dosage to 100mg.  Tr. 263.  On August 6, 2006, Plaintiff reportedly attempted to commit suicide by taking five 100mg tabs of Zoloft, but immediately vomited the medication.  Tr. 257.  She denied current suicidal ideation.  Tr. 257.  Shakeel Mohammed, M.D., referred Plaintiff to Perspectives Behavioral Health Management ("Perspectives") for therapy and treatment.  Tr. 258.

In August 2006, Plaintiff attended one therapy session at Perspectives.  Tr. 360-394.  On her intake assessment, Plaintiff reported taking more Zoloft than prescribed "to feel better."  Tr. 382.  Plaintiff's mood was worried, depressed, and tearful, and she appeared preoccupied.  Tr. 390.  However, her thought processes were logical and responsive, and thought content was appropriate.  Tr. 390.  Plaintiff was oriented times four and her memory was intact.  Tr. 390.  She had average insight and judgment.  Tr. 390.  Plaintiff was assessed with generalized anxiety disorder, dysthymia, and major depression, severe, single episode.  Tr. 377, 392.  She was given a Global Assessment of Functioning ("GAF") score of 32.  Tr. 360, 393.  In March 2007, Plaintiff was discharged from therapy for failing to keep any additional appointments.  Tr. 360-361.

On March 6, 2007, Plaintiff presented to AHEC with complaints of low hemoglobin, a patch of hair loss, and bloody stools. Tr. 252-254. She was placed on Nexium and iron supplement. Tr. 252-254. Blood testing revealed a hemoglobin level of 11.1 g/dL.[1] Tr. 250. In April 11, 2007, Plaintiff complained of headaches, for which she was prescribed Midrin. Tr. 238. On May 1, 2007, Plaintiff complained of severe headaches and anemia. Tr. 227-229. Plaintiff stated she experienced daily headaches with sensitivity to loud noises and bright lights as well as some weakness in her hands and numbness in her feet. Tr. 227. Plaintiff was assessed with migraine headaches and given prescriptions for Topamax and Maxalt. Tr. 228-229.

On May 24, 2007, Plaintiff presented with complaints of dizziness, fatigue, and a heavy menstrual cycle. Tr. 209-218. Plaintiff was assessed with menorrhagia, fatigue, and migraines. Tr. 217. Dr. Rippy prescribed iron supplements for anemia and refilled Plaintiff's migraine medications. Tr. 217. In August 2007, Plaintiff complained of weakness, dizziness, fatigue, and calf pain. Tr. 198-206. On November 15, 2007, Plaintiff presented with complaints of low back pain. Tr. 195-197. Upon examination, Plaintiff exhibited no tenderness in her back. Tr. 196. A urine analysis test ruled out renal stones and a urinary tract infection. Tr. 196-197.

In January 2008, Plaintiff saw Perka Guenev, M.D., for a sore throat, fever, and nausea, for which she was prescribed antibiotics. Tr. 190-193. In March 2008, Plaintiff complained of depression, painful urination, and muscle spasms in her back. Tr. 180-183. Dr. Guenev noted that Plaintiff was "doing better" with her back pain and spasms on Flexeril, but stated she needed to start an antidepressant. Tr. 180. At this time, Plaintiff's anemia was stable. Tr. 182. Dr. Guenev refilled Plaintiff's prescriptions for Topamax and Nexium, and also prescribed Lexapro for depression. Tr.

---

[1] Normal hemoglobin levels range from 12.0-16.0 g/dL. Tr. 250.

182-183.

Plaintiff was referred to William Knubley, M.D., a neurologist, for treatment and recommendations concerning an episode of blurry vision. Tr. 270-306. An MRI dated January 25, 2008, revealed extensive periventricular white matter disease with perpendicular pericallosal changes in the supratentorial region consistent with demyelinating patterns, such as "Dawson's fingers." Tr. 274, 276, 278, 332-333. On January 31, 2008, Dr. Knubley noted that Plaintiff had retrobulbar neuritis in her right eye, which had improved. Tr. 274, 278-282, 305-306, 489. Plaintiff reported intermittent episodes of blurry vision, shocking, tingling sensations in her legs, urinary retention, weakness, and some difficulty with swallowing and articulation. Tr. 278-279. Dr. Knubley noted that Plaintiff still experienced a shocking, tingling sensation in her legs when she bent over. Tr. 278-279. On examination, Plaintiff had some fuzziness in her right eye along with some pupillary escape. Tr. 280. Her motor examination was normal, with full muscle strength and no signs of atrophy. Tr. 280. Dr. Knubley noted some reduced sensation on the right side and reduction in vibration in both feet. Tr. 280. He also noted brisker reflexes in the left arm and legs. Tr. 281. Gait and coordination were normal. Tr. 281. Dr. Knubley noted very probable MS with multiple exacerbations over the last year, but no enhancing lesions on her MRI scan. Tr. 281. A lumbar puncture and blood testing confirmed MS. Tr. 274, 283-302, 335. An MRI of Plaintiff's thoracic spine was normal. Tr. 303-304, 334.

Dr. Knubley recommended weekly injection treatments with Avonex.[2] Tr. 274. He noted that Plaintiff did not have any symptomology other than some chronic back pain, which had

---

[2] Interferon Beta 1a is made from naturally occurring proteins and is indicated for the treatment of patients with relapsing forms of multiple sclerosis to decrease the frequency of clinical exacerbations and delay the accumulation of physical disability. PHYSICIANS' DESK REFERENCE ("PDR"), 1070-1071 (65th ed. 2011).

improved, and depression. Tr. 274. In April 2008, Plaintiff was on her fourth week of Avonex and was doing well, with "no side effects whatsoever." Tr. 272-273. Dr. Knubley noted some right-sided jaw pain, but no other exacerbations. Tr. 272. Plaintiff also complained that Lexapro and Topamax were not effective in treating her depression and headaches, respectively. Tr. 272. On examination, Plaintiff had no Marcus Gunn phenomenon, no visual field changes, and no facial asymmetry. Tr. 272. Speech was clear. Tr. 272. Plaintiff had good strength in her arms and legs with no ataxia. Tr. 272. Sensation was intact to light touch. Tr. 272. She did exhibit some signs of temporomandibular joint disorder ("TMJ"), with some crepitation and tenderness in the right jaw joint area. Tr. 272. Dr. Knubley increased Plaintiff's dosage of Topamax and prescribed Maxalt for symptomatic relief. Tr. 272. On May 28, 2008, Plaintiff complained of blurry vision in her right eye, but stated that her migraines had improved on Topamax and she was tolerating her Avonex treatment quite well. Tr. 270-271. On examination, Plaintiff exhibited no limb ataxia or weakness in her arms or legs. Tr. 270. Sensation was intact and reflexes were symmetric. Tr. 270. Dr. Knubley noted that Plaintiff's MS was presumed stable on Avonex without any significant side effects. Tr. 270.

On May 24, 2008, Plaintiff presented to St. Edward's Mercy Medical Center ("St. Edward's") after being involved in a minor car accident. Tr. 318-324. She complained of neck and low back pain with some leg numbness. Tr. 323. On examination, Plaintiff had decreased range of motion and tenderness in her neck and back. Tr. 323-324. She was assessed with neck and lumbar strain and prescribed pain medication and anti-inflammatories. Tr. 319, 321.

On June 16, 2008, Jim Takach, M.D., an agency consultant, completed a Physical Residual Functional Capacity ("RFC") Assessment, in which he determined Plaintiff could occasionally

lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk/sit for about 6 hours in an 8-hour workday, and push/pull within those limitations. Tr. 309-316. Additionally, he found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. Tr. 311. He found no manipulative, visual, or communicative limitations, but determined Plaintiff must avoid concentrated exposure to extreme cold and heat and must avoid even moderate exposure to hazards such as machinery or heights. Tr. 312-313. Dr. Takach concluded Plaintiff could perform light work. Tr. 310.

On July 29, 2008, Plaintiff followed-up with Dr. Knubley for her MS. Tr. 340-348. Dr. Knubley noted that Plaintiff had been doing relatively well, with no obvious flares. Tr. 240. However, she did complain of increasingly frequent migraine headaches lasting two to three days. Tr. 340. She also stated that Maxalt and Imitrex were only mildly helpful. Tr. 340. Dr. Knubley noted that Plaintiff's bipolar and depression symptoms were stable on Lexapro. Tr. 340. Physical examination was normal, except for some mild tingling in Plaintiff's right arm. Tr. 340. Dr. Knubley determined Plaintiff was stable on Avonex without presumptive side effects, although she had a recent high fever, possible due to viral illness. Tr. 340. For Plaintiff's migraines, Dr. Knubley increased her dosage of Topamax and prescribed Treximet to use as needed. Tr. 340-341. He also ordered a complete blood count ("CBC") test and an MRI of the head with contrast. Tr. 340. CBC results revealed slightly low hemoglobin and hemocrit levels. Tr. 342. An MRI of Plaintiff's brain revealed no appreciable change from the January 2008 study. Tr. 346-347, 399-400. On August 14, 2008, Dr. Knubley prescribed Flexeril for Plaintiff's chronic back pain. Tr. 472-473.

In October 2008, Plaintiff presented to AHEC with complaints of depression, pain, weakness, and muscle cramps. Tr. 352-355. Plaintiff stated Lexapro was not helping with her depression and

ibuprofen and Tylenol were not helping her MS pain. Tr. 352. On examination, Plaintiff had normal gait and station, and could undergo exercise testing. Tr. 353. She appeared depressed, but denied suicidal or homicidal ideation. Tr. 352-353. Brandi Guthrey, M.D., added Wellbutrin to Plaintiff's depression medication. Tr. 354. In February 2009, Plaintiff complained of migraines and stated that Topamax was not effective. Tr. 356-358. As a result, she was given a trial of Imitrex. Tr. 357-358.

On December 9, 2008, Plaintiff presented to St. Edward's with complaints of weakness and tingling of her lower extremities. Tr. 401-414. Plaintiff stated she was unable to move her lower extremities after walking. Tr. 404. At the time of admission, Plaintiff's medications included Lexapro, Avonex, Topamax, Nexium, and Flexeril. Tr. 404. On physical examination, Plaintiff had no signs of edema and peripheral pulses were palpable. Tr. 405. However, strength in the lower extremities was 0/5 and deep tendon reflexes were depressed all over and nearly absent in the lower extremities. Tr. 405. An electrocardiogram revealed normal sinus rhythm with no evidence of acute ST or T-wave changes. Tr. 405, 487-488. A CT scan of Plaintiff's brain revealed bilateral vague white matter abnormalities consistent with her history of MS. Tr. 405, 411. An MRI of Plaintiff's head revealed multiple foci of increased signal intensity in the brain parenchyma consistent with a history of demyelinating process, but there was no enhancement to suggest an active demyelination. Tr. 412. MRI studies of Plaintiff's thoracic and lumbar spine were normal. Tr. 413-414. Additional blood testing was normal, although Plaintiff's hemoglobin levels were low. Tr. 404-405, 407-410. Plaintiff was assessed with an acute exacerbation of MS and prescribed a high dose of Solu-Medrol. Tr. 408.

In June 2009, Plaintiff presented to St. Edward's with complaints of back pain, muscle spasms, shaking, vomiting, and numbness in her hands. Tr. 492-511. She was assessed with an

exacerbation of MS, treated with pain and anti-inflammatory medication, and discharged in stable condition. Tr. 492-511.

On June 17, 2009, Plaintiff followed-up with Dr. Knubley. Tr. 463-464. Plaintiff reported that her numbness and tingling were 75% to 80% better. Tr. 463. On examination, Plaintiff had normal strength of her upper and lower extremities with no drift and no ataxia. Tr. 463. Reflexes and sensation were intact. Tr. 463. Dr. Knubley found that Plaintiff's MS was presumably stable without clear cut exacerbation. Tr. 463. He also noted that Plaintiff had recently stopped and restarted Lexapro and had been experiencing chronic low back and abdominal pain. Tr. 463.

On September 29, 2009, Plaintiff was evaluated by Patricia J. Walz, Ph.D., a psychologist. Tr. 514-519. Plaintiff described her history of MS and depression. Tr. 514. She had taken Zoloft and Lexapro in the past, but was not taking any antidepressant medication at the time of evaluation. Tr. 514. Her doctor had recently prescribed a new medication, but she had not filled the prescription. Tr. 514. When asked about her family life, Plaintiff reported raising her brother due to her mother's substance abuse. Tr. 514-515. She also reported physical and sexual abuse as a child and teenager. Tr. 515. At the time of the interview, Plaintiff had three children. Tr. 516-517.

When asked about her health, Plaintiff reported muscle spasms, numbness in her hands, repeated falls, optic neuritis in her right eye, headaches, fatigue, and anemia. Tr. 516. Plaintiff reported feeling depressed, but denied suicidal or homicidal ideation. Tr. 517. She stated she could only concentrate on things that interested her and her memory had gotten worse due to her treatments. Tr. 517. Her MS treatments also reportedly caused weight gain. Tr. 516. Plaintiff reported no trouble with activities of daily living. Tr. 516. She could do chores, cook a complex meal, drive, and manage money. Tr. 515-517. She attended MS society meetings on a regular basis.

Tr. 517.

On the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III"), Plaintiff tested within the average range of intellectual functioning. Tr. 518. On the Wide Range Achievement Test, Third Edition ("WIAT"), Plaintiff was functioning on a high school level in reading and spelling and a sixth grade level in arithmetic. Tr. 518. Dr. Walz noted that Plaintiff put forth good effort and worked diligently on tasks. Tr. 518. She found that Plaintiff demonstrated average intellectual functioning in all areas but demonstrated below average skills in reading comprehension and arithmetic. Tr. 519. Dr. Walz diagnosed Plaintiff with dysthymia and a verbal learning disorder. Tr. 519. She noted that Plaintiff reported impairment in concentration and memory, which could certainly be consistent with her MS diagnosis. Tr. 519. Dr. Walz estimated Plaintiff's GAF score at 45 to 50. Tr. 519.

**III.    Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d

614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.    Discussion**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since April 29, 2008, the application date. Tr. 11. At step two, the ALJ found that Plaintiff suffered from multiple sclerosis, migraine headaches, depression, and dysthymia, which were considered severe impairments under the Act. Tr. 11. At step three, she determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr.

11-12. At step four, the ALJ found that Plaintiff had the RFC to perform light work, except that she was able to perform only unskilled work and arithmetic at a sixth grade level. Tr. 13-16. Additionally, the ALJ determined Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, could tolerate no more than moderate exposure to extremes of temperature and humidity, and could tolerate only infrequent exposure to workplace hazards such as unprotected heights and untended machinery. Tr. 13-16. After eliciting testimony from a vocational expert, the ALJ determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as hand packager, of which there are 203,000 jobs nationally and 2,100 jobs locally, housekeeper, of which there are 409,000 jobs nationally and 3,800 jobs locally, and plastics worker, of which there are 81,000 jobs nationally and 1,300 jobs locally. Tr. 16-17. Accordingly, the ALJ determined Plaintiff had not been under a disability, as defined by the Social Security Act, at any point from April 29, 2008, through April 2, 2010. Tr. 17.

Plaintiff contends the ALJ erred by: (1) improperly determining her RFC; (2) discrediting her subjective complaints; and (3) failing to fully develop the record. *See* Pl.'s Br. 9-19.

A. RFC Assessment

Plaintiff argues that the ALJ erred in determining her RFC. *See* Pl.'s Br. 9-14. Specifically, Plaintiff alleges the ALJ failed to take into account the side effects of her medication, her need to miss work due to symptoms, her need to take frequent, unscheduled breaks, the use of her hands, her headaches, and her diminished GAF scores. *See* Pl.'s Br. 11-14. This Court disagrees.

At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A

claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

First, the record does not substantiate Plaintiff's contention that she would need to miss work or take unscheduled breaks due to side effects from her medication. Plaintiff testified that she experiences flu-like symptoms, including fever, muscle spasms, and headache, once a week after receiving her Avonex injections. Tr. 43. However, Dr. Knubley, Plaintiff's neurologist, repeatedly noted that Plaintiff did well on Avonex, with "no side effects whatsoever." Tr. 270-273, 340; *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993) (record contained no report that claimant ever complained about side effects to any physician). In fact, he stated that Plaintiff's MS was presumably stable on Avonex with no clear cut exacerbations. Tr. 270-272, 463; *see Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (an impairment that can be controlled with treatment cannot be considered disabling). Although Plaintiff undoubtedly experiences difficulties due to MS, the medical evidence of record reveals that, with the exception of two reported flare-ups, her symptoms were well-controlled with treatment.

Substantial evidence supports the ALJ's determination regarding Plaintiff's remaining physical impairments. Plaintiff's alleged hand limitations are simply not supported by the objective

medical evidence. Plaintiff testified that she cannot hold a gallon of milk, peel potatoes, or carry the laundry basket because her hands go numb and tingle. Tr. 49. However, these limitations appear to be self-inflicted and based on fear rather than physical inability. Tr. 49. Although Plaintiff intermittently complained of hand numbness and tingling, Dr. Knubley noted in June 2009 that Plaintiff's numbness and tingling were 75% to 85% better. Tr. 463. On physical examination, Plaintiff had normal strength of her upper and lower extremities with no drift and no ataxia. Tr. 463. Reflexes and sensation were intact. Tr. 463. Dr. Knubley found that Plaintiff's MS was presumably stable without clear cut exacerbation. Tr. 463. Significantly, no physician, including Plaintiff's neurologist, ever assessed Plaintiff with any hand limitations. *See McNamara v. Astrue*, 590 F.3d 607, 611 (8th Cir. 2010) (no medical reports indicate that physician ever placed physical limitations on claimant's ability to perform work-related functions). As such, the objective evidence simply does support her reported hand limitations.

Additionally, the ALJ did not err in her analysis of Plaintiff's alleged migraines and back pain. The medical evidence of record reveals that Plaintiff experienced migraines requiring frequent treatment and dosage adjustments. However, she testified at the administrative hearing that her headaches were "becoming less and less" frequent. Tr. 47-48; *Olsen v. Apfel*, 2 Fed. Appx. 642, 644 (8th Cir. 2001) (claimant's symptoms improved with treatment). Furthermore, although Plaintiff complained of chronic back pain, MRI studies of her thoracic and lumbar spine yielded normal results. Tr. 413-414.

Substantial evidence also supports the ALJ's mental RFC determination. The ALJ took into account Plaintiff's intellectual limitations and cognitive deficits when she restricted her to unskilled work where she would be limited to performing math on a sixth grade level. Tr. 13. On the WAIS-

III, Plaintiff tested within the average range of intelligence. Tr. 518. On the WIAT, Plaintiff demonstrated below average skills in reading comprehension and arithmetic. Tr. 519. The ALJ's mental RFC assessment directly reflects these limitations.

Plaintiff takes issue with the ALJ's treatment of her GAF score. *See* Pl.'s Br. 13-14. Dr. Walz assessed Plaintiff with a GAF of 45-50.[3] While the ALJ afforded great weight to Dr. Walz's other findings, she attached little significance to her estimated GAF score, noting that GAF scores reveal only a picture in time and are very subjective in nature. Tr. 15; *see Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). This was not error. While the GAF system provides insight into a claimant's overall level of functioning, it is by no means dispositive on the issue of disability and must be considered in conjunction with other medical evidence. Here, the ALJ considered Dr. Walz's opinion and adopted her objective findings, but ultimately found her GAF determination unreliable in light of other evidence in the medical record. Specifically, the ALJ noted that although Plaintiff complained of depression, she failed to attend mental health counseling at no cost to herself. Tr. 16, 360-394; *see Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant had not sought formal treatment by a psychiatrist, psychologist, or other mental health care professional). After reviewing the objective evidence, the Court finds no error in the ALJ's mental RFC determination.

None of Plaintiff's medical records support her contention that she was totally disabled during the relevant time period. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Significantly, none of Plaintiff's treating physicians opined that she was unable to work. *See*

---

[3] A GAF score of 41-50 indicates "serious symptoms or any serious impairment in social, occupational, or school functioning." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000).

*Johnston v. Apfel*, 210 F.3d 870, 873 (8th Cir. 2000) (no physician expressed any opinion that the claimant was disabled). After considering all the relevant evidence, the undersigned concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).

    B. <u>Subjective Complaints</u>

Plaintiff alleges the ALJ improperly dismissed her subjective complaints. *See* Pl.'s Br. 14-18. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

Contrary to Plaintiff's assertion, the ALJ properly considered her subjective complaints and dismissed them for legally sufficient reasons. The ALJ cited the lack of objective medical corroboration as evidence that her limitations were not of disabling severity. Tr. 15-16; *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints). Additionally, although Plaintiff alleged side effects from her MS treatment,

she failed to report these side effects to Dr. Knubley or any other physician. Tr. 43; *Johnston v. Apfel*, 210 F.3d 870, 873 (8th Cir. 2000) (claimant did not complain about any medication side effects to her treating physicians). To the contrary, Dr. Knubley continually noted that Plaintiff experienced "no side effects whatsoever" from her Avonex treatments and her MS was considered stable. Tr. 270, 272-273, 340, 463; *see Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (an impairment is not considered disabling if it is adequately controlled with medication). With regard to activities of daily living, the ALJ noted that Plaintiff is able to take care of all her personal needs, care for three young children, cook, drive, and perform household chores. Tr. 15-16; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living). Finally, the ALJ found that Plaintiff's failure to begin mental health counseling was inconsistent with her allegations of disabling depression. Tr. 16; *Hutton,* 175 F.3d at 655 (claimant failed to maintain a consistent treatment pattern for her alleged mental impairments).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

C. Development of the Record

In her final argument, Plaintiff contends the ALJ failed to fully and fairly develop the record concerning her physical impairments. *See* Pl.'s Br. 18. This Court disagrees.

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician." *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Under the circumstances of this case, the ALJ fulfilled her duty to fully and fairly develop the record. The Court is cognizant that there is only one physical RFC in the transcript, which was completed by a non-treating physician. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence). However, the record is wholly devoid of any evidence, from treating and non-treating physicians alike, that Plaintiff's physical limitations are of disabling severity.[4]

---

[4] Interestingly, Plaintiff's counsel requested a consultative mental evaluation at the administrative hearing, but made no reference to obtaining a consultative physical evaluation. Tr. 33. If obtaining a consultative physical examination was essential to the case, one would assume Plaintiff's attorney would have made a request at the administrative hearing rather than waiting and raising the issue on appeal to this Court.

The ALJ had sufficient evidence to rely on in making his RFC determination. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment). There are 343 pages of medical records in the transcript, none of which support a conclusion that Plaintiff is disabled. Additionally, contrary to Plaintiff's contention, the ALJ only has a duty to re-contact a treating physician for clarification or if a crucial issue is undeveloped. *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). Neither of these circumstances is present in the case at bar. Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record). The Court finds that sufficient evidence existed for the ALJ to make a fully-informed decision as to Plaintiff's alleged disability. *Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (record contained sufficient evidence from which to make an informed decision). Accordingly, the undersigned finds that the ALJ satisfied her duty to fully develop the record.

**V.     Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 11th day of July 2011.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE